UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLIE WINNINGER,<br><br>  Plaintiff,<br><br>  v.<br><br>CASSIUS SCOTT, et al.,<br><br>  Defendants. | Case No. 21-cv-04689-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 44 |

Pending before the Court is the motion to compel arbitration filed by Defendants Kaiser Foundation Hospitals and The Permanente Medical Group, Inc. (together, "Kaiser") and joined by Defendant Cassius Scott. Dkt. Nos. 44 and 51. The Court held a hearing on April 21, 2022. *See* Dkt. No. 61. For the reasons detailed below, the Court **GRANTS** the motion to compel arbitration.

## I. BACKGROUND

Medicaid is a joint federal-state program that pays for medical services for eligible individuals with limited income. In California, Medicaid is administered through Medi-Cal, which offers medical services through managed-care plans contracted for by state and local governments. *See* 42 U.S.C. § 1396a; 42 U.S.C. § 1396u-2(a)(1)(A)(i); Cal. Welf & Inst. Code §§ 14200, *et seq.*

Plaintiff is a Medi-Cal beneficiary. Defendants assert that Plaintiff was deemed eligible for Medi-Cal by the state and subsequently enrolled by the state in Partnership HealthPlan of California ("PHC"). *See* Dkt. Nos. 44 at 3, 44-2 ("Eno Decl.") ¶ 3. According to a declaration from PHC's custodian of records submitted by Defendants, "PHC is a non-profit community based health care organization that contracts with the State of California to administer Medi-Cal

benefits (California's Medicaid program) through local care providers to ensure Medi-Cal recipients have access to high-quality comprehensive cost-effective health care." Eno Decl. ¶ 2. Defendants allege that it is PHC's practice to send new members a packet instructing the individual on how to select a health plan from PHC's array of options. *Id.* ¶ 7.

Under the Affordable Care Act ("ACA"), 42 U.S.C. § 18001, *et seq*, states are required to create "streamlined procedures" for enrollment. *See, e.g.*, 42 U.S.C. § 1396w-3(b)(3). As part of that streamlining, Medi-Cal beneficiaries must have the option to enroll in a health plan over the phone, which is what Plaintiff did. *See* 42 U.S.C. § 18083(b). In March 2018, Plaintiff called PHC and requested to be enrolled in the Kaiser Foundation Health Plan, Inc. Medi-Cal Managed Care Plan (the "Health Plan"), and her coverage began May 1, 2018. Dkt. Nos. 44 at 3-4, 54 at 1.

Plaintiff alleges that in June 2018, Defendant Cassius Scott, an obstetrician practicing out of the Kaiser Permanente San Rafael Medical Center, sexually assaulted her during a medical examination. Dkt. No. 54 at 2. Plaintiff filed this suit in June 2021, but Defendants contend that Plaintiff's claims must be resolved through arbitration because the Health Plan through which she sought treatment contains a mandatory arbitration provision.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid

2

arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

## III. DISCUSSION

### A. The Health Plan Plaintiff enrolled in contains a binding arbitration provision.

Defendants assert that PHC is responsible for enrolling individuals in Kaiser's Health Plan. Dkt. No. 44 at 3; *see also* Velarde Decl. Exhibit D at 28. According to Defendants, Kaiser does not have a role in the process until *after* PHC informs Kaiser of the individual's enrollment in the Kaiser Health Plan. *See id.* at 3-4; Velarde Decl. ¶¶ 3-4. Defendants explain that once PHC informs Kaiser of an enrollment, it is Kaiser's practice to mail the new enrollee a copy of the Health Plan Member Handbook. Dkt. No. 44 at 5; Velarde Decl. ¶ 4.

The Member Handbook Disclosure Form and Evidence of Coverage (the "Medi-Cal EOC") sets out the Health Plan terms. To create the handbook, Kaiser is required to use the model template created by the California Department of Health Care Services, and then must obtain final approval for the handbook from PHC. Velarde Decl. ¶ 3. Page 91 of the Medi-Cal EOC, under the large, bold heading "Binding Arbitration," states, in relevant part:

> "You must use *binding arbitration* if the claim is related to this *Member Handbook* or your membership with us, if all of the following requirements are met:
> - The claim is for: malpractice (a claim that medical *services* or items were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered); or delivery of *services* or items; or premises liability
> - The claim is brought by: you against us; or us against you
> - Governing law does not prevent the use of binding arbitration to resolve the claim

3

1    • The claim cannot be settled through Small Claims court[.]"

2 Velarde Decl. Exhibit D at 91 (emphasis in original signifies defined term).[1] "Services" are

3 defined as "[h]ealth care services or items ('health care' includes both physical health care and

4 mental health care) and behavioral health treatment . . . ." *Id.* at 26. As used in this provision,

5 "us" includes Kaiser Foundation Hospitals, The Permanent Medical Group, Inc., and its doctors,

6 among others. *Id.* at 92.

**B.    Defendants did not waive their right to arbitrate.**

As an initial matter, Plaintiff argues that Defendants waived their right to arbitrate by waiting over six months to bring a motion to compel arbitration. *See* Dkt. No. 54 at 4-5. Determining whether a party has waived its right to arbitrate "is presumptively for a court and not an arbitrator to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). A party asserting waiver must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* at 124 (citation omitted). Waiver of the right to arbitration is disfavored, and any party arguing waiver bears a heavy burden of proof. *Id.* (citation omitted).

Defendants' actions did not amount to a waiver under this standard. Defendants raised the binding arbitration provision in the September 2021 joint case management statement, *see* Dkt. No. 26 at 1, 5, and 7, and represent that the filing of the motion to compel arbitration was delayed while necessary documentation was gathered from Plaintiff and PHC. *See* Dkt. No. 55 at 6. Defendant Scott withdrew his motion to strike portions of the first amended complaint on the same day the case management statement was filed, *see* Dkt. No. 24, and the Court has not decided any motions going to the merits of the case. Although the parties have taken discovery, the arbitration proceedings allow for similar discovery, so Plaintiff has not been prejudiced by discovery moving forward in this case. Dkt. No. 44-5, Likar Decl. Exh. F ("Rules for Kaiser Permanente Member Arbitrations") at 16 ("Discovery shall be conducted as if the matter were in California state court."). The Court finds that Plaintiff has not met her burden to show that Defendants waived

---

[1] This version of the Medi-Cal EOC was in effect from July 1, 2017 through June 30, 2018. Neither party contests that this is the relevant agreement.

4

their right to arbitrate.

### C. The arbitration agreement is valid and enforceable.

A plain reading of the Medi-Cal EOC shows that it contains an agreement to arbitrate that encompasses the disputes in this case.[2] However, Plaintiff argues that (i) because the agreement does not comply with California law it is not valid and (ii) because the agreement is unconscionable it should not be enforced. As explained below, the Court disagrees, and finds the agreement to be valid and enforceable.

#### i. California statutes that require specific arbitration disclosures in HMO enrollment forms do not apply here.

Plaintiff argues that the arbitration agreement is not valid because her enrollment in the Health Plan did not comply with Title 10, Section 6470 of the California Code of Regulations. Section 6470, part of Chapter 12, entitled "California Health Benefit Exchange," is one of a number of provisions governing California's Exchange. *See also* 10 C.C.R. § 6410 ("'California Health Benefit Exchange' or the 'Exchange' means the entity established pursuant to government Code Section 100500. The Exchange also does business as and may be referred to as 'Covered California.'"). Under Section 6470 all individuals "who are selecting and enrolling into a health insurance plan shall agree to, sign, and date the agreement for binding arbitration . . . ." 10 C.C.R. § 6470(f)(2). The Section details the exact wording that must be used in the agreement, including specific wording for a Kaiser Medi-Cal health plan. *Id.*

Given the language in the regulation and the structure of Title 10, Chapter 12, the Court agrees with Defendants that Section 6470 applies only to enrollments through Covered California. *See* Dkt. No. 55 at 2-3. Plaintiff enrolled on the phone with PHC, not through Covered California, and therefore the requirements of Section 6470 do not apply here.

Moreover, even if Section 6470 did apply to Plaintiff's phone enrollment, it would be preempted by federal law. "There are three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015). Conflict preemption occurs where "there is an actual conflict between state and

---

[2] Plaintiff did not dispute this reading in her brief or at the hearing.

5

federal law," such as it being impossible to comply with both or where state law "stands as an obstacle to the accomplishments and execution of the full purposes and objectives of congress." *Id.* (citations and quotations omitted).

As Defendants point out, one of the goals of the ACA was to simplify the Medicaid enrollment process. *See* 42 U.S.C. § 18083(b); Dkt. No. 55 at 4. Under the ACA, states must use a "single, streamlined enrollment form" either created by the United States Department of Health and Human Services or consistent with standards promulgated by the federal government. *See* 42 U.S.C. § 18083(b). The form must be "structured to maximize an applicant's ability to complete the form satisfactorily, taking into account the characteristics of individuals who qualify for applicable State health subsidy programs," and states must allow beneficiaries to enroll using this form "online, in person, by mail, or by telephone." *See id.*

In *Hunter v. Kaiser Foundation Health Plan, Inc.*, another court in this District examined the relationship between the ACA and a California law governing the formation of insurance contracts. 434 F. Supp. 3d 764 (N.D. Cal. 2020). Section 1363.1 of California's Health and Safety Code requires that health care service plans with arbitration provisions include a clear disclosure regarding arbitration immediately before the signature line for plan enrollees. Cal. Civ. Code § 1363.1. The defendant in *Hunter* argued that Section 1363.1 conflicted with several mandates of the ACA, including requirements that individuals be allowed to enroll online and through call center agents. *Id.* at 772. The court agreed that Section 1363.1 did not apply to Plaintiff's enrollment because it was pre-empted by the ACA and California's efforts to implement it. *See id.* at 773.

Here, Plaintiff invokes a different California regulation, Section 6470, but the Court finds the reasoning in *Hunter* persuasive and applicable. Section 6470 requires that arbitration provisions in health care plans be accompanied by specific disclosure language and a signature. The ACA, on the other hand, requires a simplified enrollment procedure that individuals can access through a variety of channels. Section 6470, like Section 1363.1, is clearly inconsistent with the ACA mandate requiring a simplified telephone enrollment option. So to the extent these California signature and disclosure requirements could apply here, Defendants' failure to comply

6

1    with them is not a reason to invalidate Plaintiff's arbitration agreement, because they are pre-
2    empted by the clear rules governing Medicaid enrollment established by the ACA.

### ii. The agreement to arbitrate is not unconscionable.

Plaintiff also argues that the arbitration provision is unconscionable.  Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *See Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000). Procedural and substantive unconscionability need not be present in equal amounts. *Id.* Rather, the two are evaluated on a "sliding scale," such that the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa. *Id.* However, both forms of unconscionability must be present in some amount "for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1521 (Cal. Ct. App. 1997), *as modified* (Feb. 10, 1997).  Plaintiff contends that the arbitration provision is both procedurally and substantively unconscionable, and therefore cannot be enforced. *See* Dkt. No. 54 at 10-14.

Regarding procedural unconscionability, Plaintiff argues that the arbitration agreement is oppressive, a surprise to her, and part of an adhesion contract. *See id.* at 12.  Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power . . . ." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, (Cal. 2000).  Plaintiff frames the relevant difference in bargaining power as the one between herself and Kaiser, arguing that this imbalance precluded her from negotiating any of the terms. *See* Dkt. No. 54 at 12. However, this framing fails to account for the fact that Plaintiff had powerful entities effectively negotiating on her behalf: the state of California and PHC. *See* Dkt. No. 55 at 11.  Having the contracts negotiated on a system-wide level is a significant benefit of the Medi-Cal system.  By negotiating an array of health care plan options for individuals to choose from, Medi-Cal achieves more favorable terms than an individual would be likely to negotiate on his or her own.

In *Madden v. Kaiser Foundation Hospitals*, the Supreme Court of California declined to find unconscionable an arbitration provision in a health plan negotiated by the plaintiff's

7

employer. 17 Cal. 3d 699, 711 (1976). The Court reasoned that the employee "benefitted from representation by a board . . . which exerted its bargaining strength to secure medical protection for employees on more favorable terms than any employee could individually obtain." *Id.* The Court distinguished the employer-negotiated health plan options from traditional adhesion contracts, which lack "not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract[.]" *Id.* Like the plaintiff in *Madden*, Plaintiff here "enjoyed the opportunity to select from among several medical plans negotiated and offered" by PHC "or to contract individually for medical care." *See id.* The typical concerns associated with contracts of adhesion do not apply here.

Plaintiff also objects that the arbitration provision was "hidden at a depth of about 80 pages within the Medi-Cal EOC." Dkt. No. 54 at 12. Once again, Plaintiff's argument fails to account for the context in which she secured her health plan. Medi-Cal health plans are heavily regulated, and, according to Defendants, the Medi-Cal EOC booklet Plaintiff received was drafted using a template created by the California Department of Health Care Services and reviewed by PHC. Moreover, the Medi-Cal EOC uses clear language and a readable font. It is possible to navigate to the exact page of the arbitration provision by reading the table of contents, identifying the heading "How to Solve Problems," which appears in bold font, and then finding the subheading "Binding Arbitration." *See* Velarde Decl. Exhibit D at 11. The arbitration provision thus was not hidden.

Regarding substantive unconscionability, the Court does not find the fee provision as articulated to be unconscionable. Plaintiff argues that she will be required to split the fees and expenses of a neutral arbitrator, *see* Dkt. No. 54 at 13, but there is a straightforward process that does not require Plaintiff to pay any arbitrator fees. As explained by Defendants, under OIA Rule 15, Kaiser will pay all of the neutral arbitrator's fees and expenses if Plaintiff agrees to a single neutral arbitrator (as opposed to a three-person panel) or waives the right to a party arbitrator. *See* Dkt. No. 55 at 13. At the hearing on this motion, counsel for Kaiser explained that the vast majority of claimants choose to proceed with one neutral arbitrator paid for by Kaiser. It is therefore within Plaintiff's control to participate in arbitration without it becoming cost-prohibitive.

The Court finds that the arbitration agreement here is not unconscionable.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to compel arbitration. The case is **STAYED** pending completion of arbitration. The parties are directed to file a joint status report regarding the status of the arbitration proceeding 120 days from the date of this order and every 120 days thereafter unless otherwise ordered. The parties are also directed to notify the Court within 48 hours of the completion of arbitration. The Clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: 7/5/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge